ELMORE, Judge.
 

 *419
 
 Defendant Michael Shane Winchester appeals from judgments entered after he pled guilty to two counts of attempted heroin trafficking, one count of possession with intent to sell and deliver heroin, and one count of keeping or maintaining a dwelling to keep and sell heroin. He argues the trial court erred by denying his motions to suppress evidence obtained pursuant to the executions of a warrant to search his person, vehicle, and residence for drug dealing evidence, and by denying his motion to suppress certain statements he made in response to police questioning while he was in custody and before he was read his
 
 Miranda
 
 rights. Because probable cause supported the warrant, the searches and seizure were constitutionally reasonable and, even if defendant's responses should have been suppressed, any error in the trial court's ruling was harmless beyond a reasonable doubt. Accordingly, we affirm the trial court's order.
 

 I. Background
 

 The trial court's unchallenged findings reveal the following facts. On 23 August 2016, after a three-months long police investigation
 
 *308
 
 prompted by a tip from a confidential informant that defendant was dealing heroin, Detective Ryan C. Cole of the Guilford County Sheriff's Office obtained a warrant to search defendant's residence at 4103 Falconridge Road in Greensboro for drug dealing evidence. The search warrant also identified a 2013 white-over-red Range Rover bearing the North Carolina registration number DFD-7872 as one of three vehicles to be searched, and authorized searches of defendant and Chasity Desiree Jeffries.
 

 During the early morning that next day, Detective Cole held a tactical briefing with a police taskforce organized to assist in executing the warrant. Detective Cole discussed prior charges issued against defendant for possessing firearms, convictions obtained against defendant
 
 *420
 
 related to drug activity, and defendant's history of keeping large dogs. The officers also discussed the possibility that others, including Jeffries and possibly children, might be at the Falconridge residence. Due to these safety concerns, the officers decided to wait to execute the warrant to search the Falconridge residence until after defendant left the premises.
 

 Around 9:45 a.m., about two hours after surveilling officers had been stationed outside the Falconridge residence, they observed defendant leave the residence, enter the identified Range Rover, and drive away. Detective Cole instructed assisting officers to stop the vehicle to execute the warrant to search defendant and the Range Rover. The officers tailed Range Rover in their patrol cars for about two miles until it pulled into an Advance Auto Parts parking lot and parked. The officers pulled into the parking lot, informed defendant he was under investigation, and detained him in handcuffs.
 

 After Detective Cole arrived at the Advance Auto parking lot, he read defendant the search warrant, and the officers executed the warrant by searching defendant and the Range Rover. The search of defendant's person yielded no incriminating drug evidence. Although a police canine positively alerted for narcotics at the Range Rover's driver's side door, the police search upon executing the warrant ultimately yielded no drug evidence.
 

 While defendant was still being held in investigative detention at Advance Auto and before he was read his
 
 Miranda
 
 rights, Detective Cole informed defendant about the warrant to search the Falconridge residence and asked him whether there were any other people including children or aggressive dogs at the residence, or whether there were any weapons being stored there. In response to Detective Cole's questioning, defendant replied that he had never been to the Falconridge residence and denied having any knowledge of or involvement with that residence.
 

 Detective Cole then radioed authorization to the officers staking out the Falconridge address to execute the search warrant on the residence. Those officers announced "Sheriff's Office, Search Warrant" three times and, after hearing no response, broke down the front door using a ramming device. The entering officers discovered Jeffries inside and detained her incident to the search. Soon after the officers entered the premises, defendant was returned to the Falconridge residence while the officers completed their search. That search revealed a large quantity of heroin stored in the kitchen, as well as several items related to packaging and distributing illegal drugs.
 

 *421
 
 On 7 November 2016, a grand jury indicted defendant for maintaining a dwelling to keep and sell heroin, trafficking heroin by possessing twenty-eight grams or more of heroin, and possession with intent to sell or deliver heroin. On 10 March 2017, defendant moved to suppress all evidence seized from the searches of his person and the Range Rover at Advance Auto, and from the search of the Falconridge residence, as well as all statements he made in response to police questioning before he was read his
 
 Miranda
 
 rights.
 

 After a 9 May 2017 suppression hearing, the trial court entered an order that in relevant part denied defendant's motion to suppress the evidence seized pursuant to the execution of the warrant, as well as his responses to Detective Cole's questioning about the Falconridge residence while he was in
 
 *309
 
 custody at Advance Auto.
 
 [1]
 
 The trial court concluded in relevant part the search warrant was supported by probable cause; defendant's seizure was reasonable; the execution of the warrant on the Falconridge residence neither violated our General Statutes nor defendant's constitutional rights; and defendant's responses to Detective Cole's questioning at Advance Auto were admissible, despite not having been advised of his
 
 Miranda
 
 rights, because the questioning fell under the "public safety" exception to the
 
 Miranda
 
 requirement.
 
 See
 

 New York v. Quarles
 
 ,
 
 467 U.S. 649
 
 ,
 
 104 S.Ct. 2626
 
 ,
 
 81 L.Ed.2d 550
 
 (1984).
 

 On 3 August 2017, defendant entered a plea agreement in which he pled guilty to two counts of attempted heroin trafficking by manufacturing twenty-eight grams or more of heroin and by possessing twenty-eight grams or more of heroin, possession with intent to sell and deliver heroin, and maintaining a dwelling to keep and sell heroin, while reserving his right to appeal the trial court's suppression rulings. The trial court sentenced defendant to two consecutive terms of sixty to eight-four months in prison. Defendant appeals.
 

 II. Analysis
 

 On appeal, defendant contends the trial court erred by denying his suppression motions on the following grounds: (1) the searches of his person and vehicle were constitutionally unreasonable because the warrant lacked probable cause; (2) the seizure of his person was constitutionally unreasonable because he was detained too far away from the residence to constitute a lawful detention incident to the execution
 
 *422
 
 of a search warrant on the premises,
 
 see
 

 Bailey v. United States
 
 ,
 
 568 U.S. 186
 
 ,
 
 133 S.Ct. 1031
 
 ,
 
 185 L.Ed.2d 19
 
 (2013) ; (3) the search of the residence was unreasonable because the officers violated N.C. Gen. Stat. § 15A-251's knock-and-announce requirement; and (4) his responses to Detective Cole's questioning at Advance Auto about the Falconridge address were obtained in violation of his
 
 Miranda
 
 rights.
 

 A. Review Standard
 

 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). But where, as here, a defendant fails to challenge the evidentiary support of any finding, our review is further "limited to whether the trial court's findings of fact support its conclusions of law."
 
 State v. Cheek
 
 ,
 
 351 N.C. 48
 
 , 63,
 
 520 S.E.2d 545
 
 , 554 (1999) (citing
 
 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 438,
 
 446 S.E.2d 67
 
 , 68 (1994) ). "The trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 B. Searches of Defendant and his Vehicle
 

 Defendant first asserts the searches of his person and vehicle were unreasonable because the warrant lacked probable cause. He concedes Detective Cole's "search warrant application may [have] support[ed] probable cause for a search of the [Falconridge residence] ... based upon the trash pulls" but argues it failed to provide probable cause to search him or his vehicle. According to defendant, the allegations of the warrant application supporting those searches were founded upon unreliable statements from a confidential informant, and the drug dealing evidence recovered from the multiple trash pulls at the Falconridge residence was " 'stale' and lacked any connection to [him]." We disagree.
 

 A search warrant affidavit must contain sufficient information to establish probable cause "to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender."
 

 *310
 

 State v. Arrington
 
 ,
 
 311 N.C. 633
 
 , 636,
 
 319 S.E.2d 254
 
 , 256 (1984) (citing
 
 State v. Riddick
 
 ,
 
 291 N.C. 399
 
 , 406,
 
 230 S.E.2d 506
 
 , 511 (1976) ). "A magistrate must 'make a practical, common-sense decision,' based on the totality of the circumstances, whether there is a 'fair probability' that contraband will be found in the place to be searched."
 

 *423
 

 State v. McKinney
 
 ,
 
 368 N.C. 161
 
 , 164,
 
 775 S.E.2d 821
 
 , 824 (2015) (quoting
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 238,
 
 103 S.Ct. 2317
 
 , 2332,
 
 76 L.Ed.2d 527
 
 (1983) ). "We review
 
 de novo
 
 a trial court's conclusion that a magistrate had probable cause to issue a search warrant."
 
 State v. Worley
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 412
 
 , 416 (2017) (citing
 
 State v. Allman
 
 ,
 
 369 N.C. 292
 
 , 296-97,
 
 794 S.E.2d 301
 
 , 305 (2016) ).
 

 Here, the trial court issued the following unchallenged findings:
 

 2.... [D]uring the months of April and May 2016, Detective ... Cole ... learned that the defendant may be selling heroin and other dangerous drugs from a residence located on Falcon Ridge Court in Greensboro, North Carolina;
 

 3.... [A] confidential informant known to Detective Cole advised that the defendant was using a Red and White Land Rover Range Rover to transport heroin and other dangerous drugs to and from the subject premises, and further selling dangerous drugs from the vehicle. The confidential informant was able to provide an accurate description of the [Range Rover], including providing an accurate license tag number;
 

 ....
 

 5.... [B]ased upon the information provided by the confidential informant, Detective Cole began a criminal investigation of the defendant, the [Range Rover] and ultimately the [Falconridge residence];
 

 6.... [A]s part of Detective Cole's investigation, [he] applied for and received authorization to put an electronic GPS tracking device on the [Range Rover];
 

 7.... Detective Cole solicited the assistance of other deputies with the Sheriff's Office and officers with assisting agencies to conduct visual surveillance of the defendant and the defendant's activities, including locations the defendant frequented while driving the [Range Rover];
 

 8.... [B]ased upon the electronic and visual surveillance of the defendant and the [Range Rover], Detective Cole learned that the defendant appeared to reside at the [Falconridge] residence;
 

 9.... [A]s a result of the electronic and visual surveillance, Detective Cole learned that the defendant frequented locations known for the sale of illegal drugs, including heroin,
 
 *424
 
 including a residence ... well known to Detective Cole to be a location where dangerous drugs were sold;
 

 10.... [O]n August 14, 2016 the defendant was stopped, at the direction of Detective Cole, while operating the [Range Rover]. At that stop the defendant's vehicle was displaying a fictitious or altered license tag, and the defendant was operating the [Range Rover] at a time when his driving privileges had been suspended or revoked. The defendant was arrested for these offenses on that date;
 

 11.... Detective Cole, with assistance of other law enforcement officers working on the criminal investigation of the defendant, performed several "trash pulls" at the [Falconridge] residence;
 

 12.... [T]he aforementioned "trash pulls" at the [Falconridge] residence yielded contents including paraphernalia that tested positive for the presence of heroin and cocaine, as well as utility bills and other paper material that demonstrated that the defendant resided at the [Falconridge] residence;
 

 13.... [T]he most recent "trash pull" that yielded material testing positive for dangerous drugs had occurred within one week of the subject searches[.]
 

 These binding findings support the trial court's conclusion that the magistrate had probable cause to issue the warrant to search defendant and the Range Rover for drug dealing evidence. The confidential informant's statements were corroborated by the months-long police investigation, the drug dealing evidence recovered from the multiple trash pulls was not stale, and the allegations sufficiently linked defendant and the Range Rover to the Falconridge residence and the known drug evidence.
 

 *311
 
 In his warrant affidavit, Detective Cole alleged that police surveilling defendant observed him driving the identified Range Rover multiple times; visual and electronic surveillance of the Range Rover revealed it frequented places known to be involved in drug dealing activity and would "travel to locations, stay a short amount of time, and then leave the locations," which Detective Cole opined, in his experience, was "behavior ... indicative of narcotics distribution"; and police observed the Range Rover parked in the Falconridge residence driveway. Additionally, police at least twice observed defendant leaving the Falconridge residence, that residence was listed as defendant's most recent address
 
 *425
 
 in a DMV database, utilities to the Falconridge residence were held in defendant's name, the report generated after a 911 complaint regarding unleashed animals at the Falconridge residence indicated defendant was "the owner of two or three pit bulls which were running loose," and trash pulls on three occasions revealed drug dealing evidence and letters addressed to defendant and other documents listing his name.
 

 Under the totality of the circumstances, Detective Cole's warrant affidavit sufficiently linked defendant and the Range Rover to the drug dealing evidence recovered from the trash pulls at the Falconridge residence. Additionally, based on the affidavit reciting multiple trash pulls at the Falconridge residence revealing drug dealing evidence, the last occurring one week prior to the warrant application, this evidence was not stale under the circumstances.
 
 See
 

 State v. McCoy
 
 ,
 
 100 N.C. App. 574
 
 , 577,
 
 397 S.E.2d 355
 
 , 358 (1990) ("[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant. The continuity of the offense may be the most important factor in determining whether the probable cause is valid or stale." (citations omitted) ). Because Detective Cole's warrant affidavit supplied the magistrate probable cause to issue a warrant to search defendant and the Range Rover for drug evidence, the trial court properly denied defendant's motion to suppress the evidence obtained pursuant to the execution of that warrant based upon its validity.
 

 C. Seizure of Defendant
 

 Defendant next asserts his seizure at Advance Auto was unreasonable under
 
 Bailey v. United States
 
 ,
 
 568 U.S. 186
 
 ,
 
 133 S.Ct. 1031
 
 ,
 
 185 L.Ed.2d 19
 
 (2013), because it occurred two miles away from the Falconridge residence. Although
 
 Bailey
 
 instructs that police detentions of occupants incident to the execution of a search warrant on a premises is spatially contained to the "immediate vicinity of a premises to be searched,"
 

 id.
 

 at 201
 
 ,
 
 133 S. Ct. at 1043
 
 , defendant's reliance on
 
 Bailey
 
 is misguided.
 

 In
 
 Bailey
 
 , the defendant-occupants were "stopped and detained at some distance from the premises to be searched" and because the search warrant applied only to the premises, "the only justification for the detention was to ensure the safety and efficacy of the [premises] search."
 

 Id.
 

 at 189-90
 
 ,
 
 133 S.Ct. at 1035
 
 . Since the Court concluded the reasonableness of an occupant's detention incident to the execution of a search warrant "must be limited to the immediate vicinity of the premises covered by a search warrant,"
 

 id.
 

 at 199
 
 ,
 
 133 S.Ct. at 1041
 
 , it held the lawful warrant issued to search the premises did not justify seizing
 
 *426
 
 the former occupants about one mile away from the premises to be searched.
 

 Id.
 

 at 202
 
 ,
 
 133 S.Ct. at 1043
 
 . The
 
 Bailey
 
 Court therefore remanded the case with instructions for the lower court to determine whether the officers had an independent justification for seizing the occupants.
 

 Id.
 

 ;
 
 see also
 

 id.
 

 at 202
 
 ,
 
 133 S.Ct. at 1042
 
 ("If officers elect to defer the detention until the suspect or departing occupant leaves the immediate vicinity, the lawfulness of detention is controlled by other standards, including, of course, a brief stop for questioning based on reasonable suspicion under
 
 Terry
 
 or an arrest based on probable cause.").
 

 Here, contrarily, the warrant was issued to search both the Falconridge address and defendant's person for drug dealing evidence. Further, the warrant affidavit, supported by the months-long police investigation, provided an independent justification for detaining defendant. Because the officers here had independent probable cause to arrest
 
 *312
 
 defendant in connection with the known drug dealing evidence recovered from the trash pulls at the Falconridge residence or, at a minimum, reasonable suspicion to believe defendant had been involved in dealing drugs sufficient to justify briefly detaining and questioning him about that activity, the justification for seizing him at Advance Auto was not limited to the issuance of the warrant to search the Falconridge residence. Therefore, the trial court properly denied defendant's motion to suppress on the basis that his seizure was unreasonable.
 

 D. Search of the Residence
 

 Defendant next asserts the trial court erred by denying his motion to suppress because the search of the Falconridge residence was unreasonable. He argues "[t]he officers deliberately waited until Defendant vacated the premises before breaking open the door without knocking and announcing their presence," thereby substantially violating N.C. Gen. Stat. § 15A-249's knock-and-announce requirement.
 
 See
 
 N.C. Gen. Stat. § 15A-974(a)(2) (2017) (requiring the suppression of evidence if "obtained as a result of a
 
 substantial
 
 violation of the provisions of ... Chapter [15A]" (emphasis added) ). We disagree.
 

 N.C. Gen. Stat. § 15A-249 (2017) provides in pertinent part that an
 

 officer executing a search warrant must, before entering the premises, give appropriate notice of his identity and purpose to the person to be searched, or the person in apparent control of the premises to be searched. If it is unclear whether anyone is present at the premises to be
 
 *427
 
 searched, he must give the notice in a manner likely to be heard by anyone who is present.
 

 N.C. Gen. Stat. § 15A-251 (2017) authorizes an officer to
 

 break and enter any premises ... when necessary to the execution of the warrant if:
 

 (1) The officer has previously announced his identity and purpose as required by G.S. 15A-249 and reasonably believes either that admittance is being denied or unreasonably delayed or that the premises or vehicle is unoccupied; or
 

 (2) The officer has probable cause to believe that the giving of notice would endanger the life or safety of any person.
 

 Here, the trial court issued the following unchallenged findings as to the officers' execution of the search warrant on the Falconridge residence:
 

 41.... [P]rior to executing the Search Warrant upon the residence, Detective Stacy Garrell loudly announced three (3) times that officers would be entering the residence for purposes [of] execution of the search warrant by yelling "Sheriff's Office, Search Warrant" prior to making entry into the [Falconridge] residence;
 

 42.... [A]fter waiting a reasonable time and hearing no response from any occupant that may be in the [Falconridge] residence, Detective Jeff Murphy made forced entry into the residence by use of a ramming device[.]
 

 These binding findings establish the officers announced their presence concordant with section 15A-249's knock-and-announce requirement and "after waiting a reasonable time and hearing no response" were authorized under section 15A-251 to break and enter into the residence. Defendant has failed to demonstrate the officers' execution of the warrant violated the challenged provision of Chapter 15A-much less amounted to a "substantial" violation necessary to justify suppressing evidence under section 15A-974(a)(2). Therefore, the trial court properly denied defendant's motion to suppress on this basis.
 

 *428
 

 E. Responses to Police Questioning
 

 Defendant next asserts the trial court erred by denying his motion to suppress his responses to Detective Cole's questioning at Advance Auto because they were made while he was in custody and before he was advised of his
 
 Miranda
 
 rights. The State first responds that Detective Cole's questioning was permissible, and thus defendant's responses were admissible, under the "public safety" exception the
 
 Miranda
 
 requirement.
 
 See
 

 Quarles
 
 ,
 
 467 U.S. at 655-56
 
 ,
 
 104 S.Ct. at 2631
 
 (recognizing a "narrow exception to the
 
 *313
 

 Miranda
 
 rule" when police questioning is limited solely to obtaining information necessary to secure public safety). The State next argues that, even if the questioning exceeded
 
 Quarles
 
 ' narrow public safety exception and therefore defendant's responses should have been suppressed, defendant cannot establish prejudicial error. We agree any alleged error in the trial court's ruling was harmless beyond a reasonable doubt.
 

 Here, the trial court issued the following unchallenged findings:
 

 32.... [W]hile the defendant was still in investigative detention [at Advance Auto], including his being handcuffed and seated in the back seat of Deputy Phillips' patrol vehicle, Detective Cole asked the defendant several questions relative to the residence that was a subject of the Search Warrant;
 

 33.... [N]either Detective Cole or any other law enforcement officer informed the defendant of his rights pursuant to
 
 Miranda v. Arizona
 
 before questioning the defendant;
 

 34.... [T]he purpose for Detective Cole's asking the defendant about the residence was to ascertain whether other subjects may be within the [Falconridge] residence, including children, and whether there may be firearms, aggressive dogs or other circumstances that may pose a danger to officers or other persons, consistent with the defendant's history;
 

 35.... Detective Cole did not ask questions of the defendant for investigative purposes or for the purpose of eliciting inculpatory statements from the defendant;
 

 36.... [I]n response to Detective Cole's questions, the defendant stated he had never been in the [Falconridge] residence, did not know anything about the [Falconridge] residence and disavowed any control over the residence.
 

 *429
 
 Detective Cole confronted the defendant about officers having observed the defendant leaving the [Falconridge] residence, which the defendant likewise denied[.]
 

 Although defendant has not identified on appeal any particular incriminating statement he made in response to Detective Cole's questioning about the potential safety concerns of executing the warrant to search the Falconridge residence, defendant's responses merely denied his knowledge of or involvement with that residence. In light of the non-inculpatory nature of defendant's responses, and the State's overwhelming evidence linking defendant to the Falconridge residence, even if Detective Cole's questioning exceeded
 
 Quarles
 
 's narrow public safety exception to the
 
 Miranda
 
 requirement, we conclude any error in the trial court's ruling was harmless beyond a reasonable doubt. Accordingly, we overrule this argument.
 

 III. Conclusion
 

 Because the warrant issued to search defendant and the Range Rover was supported by probable cause, the trial court properly denied defendant's motion to suppress based on the validity of the warrant. Because the warrant and months-long police investigation justified defendant's detention independent from his status as an occupant of a premises subject to a search warrant, the trial court properly denied defendant's motion to suppress on the basis that his seizure was unreasonable. Because the trial court's findings established that the officers' execution of the search warrant on the Falconridge residence complied with section 15A-249's knock-and-announce requirement, the trial court properly determined there was no "substantial" Chapter 15A violation that would require the suppression of evidence under section 15A-974(a)(2). Finally, even if Detective Cole's questioning fell outside
 
 Quarles
 
 ' narrow public safety exception to the
 
 Miranda
 
 requirement, we conclude any alleged error in the trial court's ruling defendant's responses were admissible was harmless beyond a reasonable doubt in light of the non-incriminating nature of those statements and the overwhelming evidence linking defendant to the Falconridge residence. Accordingly, we affirm the trial court's suppression order.
 

 AFFIRMED.
 

 Judges HUNTER, JR. and DAVIS concur.
 

 [1]
 

 The trial court granted defendant's motion to suppress certain other statements he made while in custody and after he was transported from Advance Auto, but those rulings are not at issue on appeal.