IN THE SUPREME COURT OF NORTH CAROLINA

No. 25A16

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

BRITTANY TAYLOR ALLMAN

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 781 S.E.2d 311 (2016), affirming an order entered on 2 October 2014 by Judge Jack Jenkins in Superior Court, New Hanover County. Heard in the Supreme Court on 30 August 2016.

*Roy Cooper, Attorney General, by Derrick C. Mertz, Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Paul M. Green, Assistant Appellate Defender, for defendant-appellee.*

MARTIN, Chief Justice.

The sole issue before us is whether the trial court properly granted defendant's motion to suppress evidence. The Court of Appeals affirmed the trial court's ruling. We hold that the magistrate in this case had a substantial basis to find that probable cause existed to issue the challenged search warrant, and we therefore reverse the decision of the Court of Appeals.

Defendant lived with Sean Whitehead and Jeremy Black, who were half-brothers, at 4844 Acres Drive in Wilmington, North Carolina. The police stopped a

car that Black was driving. Whitehead was a passenger. Inside the car, the police found 8.1 ounces of marijuana and over $1600 in cash. This stop ultimately led to the issuance of a warrant to search defendant's home. Based on evidence found there, defendant was charged with six offenses pertaining to the manufacture, possession, and sale or delivery of illegal drugs.

Defendant moved to suppress evidence seized during the search of her home, arguing that the warrant to conduct the search was not supported by probable cause. After a hearing, the trial court granted defendant's motion, and the State appealed. The Court of Appeals affirmed the trial court's ruling, with one judge dissenting. *State v. Allman*, ___ N.C. App. ___, ___, 781 S.E.2d 311, 318 (2016); *id.* at ___, 781 S.E.2d at 318-20 (Dillon, J., dissenting). The State then filed a notice of appeal with this Court.

The Fourth Amendment to the United States Constitution protects the people from "unreasonable searches and seizures." U.S. Const. amend. IV. Absent exigent circumstances, the police need a warrant to conduct a search of or seizure in a home, *see Payton v. New York*, 445 U.S. 573, 586 (1980), and a warrant may be issued only on a showing of probable cause, U.S. Const. amend. IV. Article I, Section 20 of the Constitution of North Carolina likewise prohibits unreasonable searches and seizures and requires that warrants be issued only on probable cause. *See State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260-61 (1984).

The Supreme Court of the United States has adopted the totality of the circumstances test to determine whether probable cause exists under the Fourth Amendment. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). This Court has adopted the same totality of the circumstances test to determine whether probable cause exists under Article I, Section 20 of the state constitution. *See Arrington*, 311 N.C. at 643, 319 S.E.2d at 260-61. And because the text of Article I, Section 20 does not "call[ ] for broader protection than that of the Fourth Amendment," *State v. Miller*, 367 N.C. 702, 706, 766 S.E.2d 289, 292 (2014), the probable cause analysis under the federal and state constitutions is identical.[1]

In general, "a neutral and detached magistrate," not an "officer engaged in the often competitive enterprise of ferreting out crime," must determine whether probable cause exists. *Gates*, 462 U.S. at 240 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). To determine whether probable cause exists under the totality of the circumstances, a magistrate may draw "[r]easonable inferences from the available observations." *State v. Riggs*, 328 N.C. 213, 221, 400 S.E.2d 429, 434 (1991). A single piece of evidence may not necessarily be conclusive; as long as the pieces fit

---

[1] In *State v. Carter*, this Court declined to adopt a good faith exception to the state constitution's exclusionary rule. *Compare State v. Carter*, 322 N.C. 709, 724, 370 S.E.2d 553, 562 (1988), *with United States v. Leon*, 468 U.S. 897, 913 (1984) (adopting a good faith exception to the Fourth Amendment exclusionary rule). But the holding in *Carter*, which concerns the proper remedy for an unreasonable search or seizure, does not affect the scope of our probable cause analysis, which concerns whether an unreasonable search or seizure happened in the first place.

together well and yield a fair probability that a police officer executing the warrant will find contraband or evidence of a crime at the place to be searched, a magistrate has probable cause to issue a warrant. *See Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) (per curiam); *see also Gates*, 462 U.S. at 238.

Reviewing "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Riggs*, 328 N.C. at 222, 400 S.E.2d at 434-35 (alterations in original) (quoting *Gates*, 462 U.S. at 236). Because " '[a] grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," a reviewing court should not subject the issuing magistrate's probable cause determination to de novo review. *Gates*, 462 U.S. at 236 (citation omitted) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). The magistrate's probable cause determination should instead be given "great deference." *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). In practice, the reviewing court gives deference to the magistrate's determination by "ensur[ing] that the magistrate had a *substantial basis for . . . conclud[ing]* that probable cause existed." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258 (emphasis added) (second and third alterations in original) (quoting *Gates*, 462 U.S. at 238-239).

Under North Carolina law, an application for a search warrant "must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items [subject to

seizure] are in the place[ ] . . . to be searched." N.C.G.S. § 15A-244(3) (2015). A supporting affidavit is sufficient when it gives the magistrate "reasonable cause to believe that the search will reveal the presence of the [items] sought on the premises described in the [warrant] application," and that those items "will aid in the apprehension or conviction of the offender." *State v. Bright*, 301 N.C. 243, 249, 271 S.E.2d 368, 372 (1980). But a magistrate cannot lawfully issue a search warrant based on an affidavit that is "purely conclusory" and that does not state the underlying circumstances allegedly giving rise to probable cause. *Id.*

The affidavit in this case, which was submitted by Detective Anthony E. Bacon Jr. of the New Hanover County Sheriff's Office, contained all of the following allegations:

Agent Joe Cherry of the Brunswick County Sheriff's Office stopped a car that Jeremy Black was driving. Black's half-brother Sean Whitehead was a passenger in the car. Agent Cherry used a K-9 unit to conduct an exterior sniff of the car, and the dog "alerted on the vehicle for illegal controlled substances." Agent Cherry then searched the car and found 8.1 ounces of marijuana packaged in a Ziploc bag, which was inside of a vacuum sealed bag, which in turn was inside of a manila envelope. He also found over $1600 in cash.

Detective Bacon checked both Black's and Whitehead's criminal histories. He discovered that Whitehead had previously been charged on several occasions with

"crimes relating to the illegal sale and distribution of marijuana" and had been convicted of possession with the intent to sell and deliver marijuana. Detective Bacon also discovered that Black had pleaded guilty to first-degree burglary and had been charged with cocaine distribution and possession of marijuana. During the vehicle stop, Whitehead maintained that he and Black lived at 30 Twin Oaks Drive in Castle Hayne, North Carolina. Whitehead said that he and Black had been on their way back there before they were stopped.

On the same day as the vehicle stop, Detective Bacon went to 30 Twin Oaks Drive. When he got there, he discovered that neither half-brother lived at that address but that Whitehead's and Black's mother, Elsie Black, did. Ms. Black told Detective Bacon that the two men lived at 4844 Acres Drive in Wilmington and had not lived at 30 Twin Oaks Drive for about three years.[2] She described the Acres Drive property as a small one-story residence that had "a big, tall privacy fence in the backyard" and said that "there should be an old red truck and an old white truck at the house." At that point, another detective went to 4844 Acres Drive. The property matched the description given by Ms. Black, and one of the two trucks outside of the house was registered to Jeremy Black.

In addition to stating all of these allegations, the affidavit recited Detective Bacon's extensive training in law enforcement and extensive experience with drug

---

[2] Here and elsewhere, the affidavit mistakenly listed the Acres Drive address as 4814, not 4844.

investigations and trials. The affidavit also stated, based on Detective Bacon's training and experience, that drug dealers typically keep evidence of drug dealing at their homes, including but not limited to the drugs themselves, records of drug dealing activities, tools and materials used to weigh and package drugs, large amounts of cash, and expensive things purchased with drug money.

Supported by his affidavit, Detective Bacon applied for a warrant to search the property at 4844 Acres Drive, and the magistrate issued it.[3] When detectives searched the Acres Drive house (several hours after Detective Bacon went to 30 Twin Oaks Drive), they found varying amounts of marijuana throughout the living room and a shotgun in defendant's bedroom. According to a police inventory sheet, the detectives also found, among other things, digital scales, plastic packaging material, sandwich bags, smoking pipes, and rolling papers in the house. In addition, the detectives discovered a wall safe that contained syringes filled with a liquid later identified as psilocybin mushrooms, a controlled substance.

When reviewing a trial court's ruling on a motion to suppress, we analyze whether the trial court's "underlying findings of fact are supported by competent evidence . . . and whether those factual findings in turn support the [trial court's] ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619

---

[3] Because the warrant replicated the error in the affidavit, it listed the property's address as 4814 Acres Drive. Defendant does not argue that this error makes the warrant invalid.

(1982). The trial court found virtually all of the facts that we have just recounted, and its findings were supported by competent evidence—namely, by the affidavit itself.

But the trial court erred in its conclusion of law that the facts alleged in Detective Bacon's affidavit were insufficient to support a finding of probable cause to issue the search warrant. Based on the quantity of marijuana and the amount of cash found in the car, the fact that the marijuana appeared to be packaged for sale, and Whitehead's and Black's criminal histories, it was reasonable for the magistrate to infer that the half-brothers were drug dealers. Based on the mother's statement that Whitehead and Black really lived at 4844 Acres Drive, the fact that her description of 4844 Acres Drive matched the appearance of the actual premises, and the fact that one of the trucks there was registered to Black, it was reasonable for the magistrate to infer that Whitehead and Black lived there. And based on the insight from Detective Bacon's training and experience that evidence of drug dealing is likely to be found at a drug dealer's home, and the fact that Whitehead lied about where he and Black lived, it was reasonable for the magistrate to infer that there could be evidence of drug dealing at 4844 Acres Drive. These are just the sort of common-sense inferences that a magistrate is permitted to make when determining whether probable cause exists.

We acknowledge that nothing in Detective Bacon's affidavit directly linked defendant's home with evidence of drug dealing. But federal circuit courts have

addressed this precise situation and held that a suspected drug dealer's lie about his address, in combination with other evidence of drug dealing, can give rise to probable cause to search his home. In *United States v. Whitner*, for example, the Third Circuit noted that "direct evidence linking the crime to the location to be searched is not required to support a search warrant," 219 F.3d 289, 297 (3d Cir. 2000), and that a suspected drug dealer's lie to federal agents about where he lived was an "important piece of evidence linking the crime to" the suspect's apartment, *id.* at 298. "[W]hen combined with . . . other information" from the attesting officer's affidavit, the Third Circuit ruled, the suspect's lie "logically suggests that [he] was storing some evidence of illegal activity at [his] apartment which he did not want the agents to discover." *Id.* at 299. And in *United States v. Caicedo*, the Sixth Circuit held that probable cause existed to search a suspected drug dealer's home because, among other reasons, the suspect "had lied about his address in statements" that he made after his arrest. 85 F.3d 1184, 1193 (6th Cir. 1996).

The Court of Appeals maintained that the facts here were "materially indistinguishable" from those in *State v. Campbell. See Allman*, ___ N.C. App. at ___, 781 S.E.2d at 316. In *Campbell*, we held that the facts alleged in the affidavit in that case were too conclusory to support a finding of probable cause to search the home of suspected drug dealers. *State v. Campbell*, 282 N.C. 125, 129-32, 191 S.E.2d 752, 756-57 (1972). But the facts of *Campbell* can be distinguished from the facts here in two ways. First, in contrast to the affidavit supporting the warrant in this case, there

is no indication that the affidavit in *Campbell* mentioned any insights from the affiant's training and experience, or used them to link evidence of drug dealing with the home of the suspected dealers. *See id.* at 130-31, 191 S.E.2d at 756; *see also State v. McKinney*, 368 N.C. 161, 164, 775 S.E.2d 821, 825 (2015) (stating that evidence supporting a warrant application is "viewed from the perspective of a police officer with the affiant's training and experience"). Second, while a suspect in this case lied to Agent Cherry about his true address, nothing in the *Campbell* opinion indicates that any of the subjects of that search lied to the authorities about their home address. So *Campbell* does not alter our conclusion.

Defendant has argued that N.C.G.S. § 15A-244(3) provides an independent basis for granting her motion to suppress. As we have noted above, subsection 15A-244(3) specifies that a warrant application must be supported by at least one affidavit that states with particularity the facts and circumstances that establish probable cause. Although defendant suggests that this provision limits the scope of what qualifies as probable cause, she is mistaken. The provision does not change the probable cause standard at all; it just specifies the type of evidence that the police have to produce to *meet* the standard.

In sum, under the totality of the circumstances, the magistrate in this case had a substantial basis to conclude that probable cause existed to search defendant's home. We therefore reverse the decision of the Court of Appeals and remand this

case to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.