IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1187

 Filed: 20 August 2019

Carteret County, No. 17 CRS 51572

STATE OF NORTH CAROLINA

 v.

NICHOLAS OMAR BAILEY, Defendant.

 Appeal by defendant from judgment entered 10 July 2018 by Judge Charles H.

Henry in Carteret County Superior Court. Heard in the Court of Appeals 11 April

2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Jessica
 Macari, for the State.

 Richard Croutharmel for defendant-appellant.

 BERGER, Judge.

 Nicholas Omar Bailey (“Defendant”) appeals from a judgment entered upon his

guilty plea to trafficking in cocaine, following the trial court’s denial of his motion to

suppress. Because the magistrate had a substantial basis to find probable cause, we

affirm the trial court’s order denying Defendant’s motion to suppress.

 Factual and Procedural Background

 On April 25, 2017, Detective Dallas Rose (“Detective Rose”) with the Carteret

County Sheriff’s Department applied to a magistrate for a warrant to search the
 STATE V. BAILEY

 Opinion of the Court

residence belonging to Brittany Tommasone (“Tommasone”) and James White

(“White”) located at 146 E. Chatham Street, Apartment #1, Newport, North Carolina;

any individual located at that location during the execution of the search warrant;

and any vehicle at that location, including a blue Jeep Compass. Detective Rose, after

being duly sworn, stated in his application that there was probable cause to believe

“[h]eroin, scales, paraphernalia, packaging equipment, videos, photos, ledgers and

documents” related to illegal narcotics would be found at the named location.

 Detective Rose provided information concerning his training and experience as

a law enforcement officer for twelve years. Specifically, Detective Rose swore that he

 has been a Deputy Sheriff for 9 years and has been a Police
 K-9 Handler for 6 years with the Carteret County Sheriff’s
 Office. The affiant also was a Police Officer for the
 Morehead City Police Department for 3 years. The affiant
 is currently assigned as a Detective with the Carteret
 County Sheriff’s Office Narcotics Unit. The Affiant has
 been employed with the Carteret County Sheriff’s Office
 since January 2006. The Affiant has received training in
 the field of Narcotics Investigations and Criminal
 Interdiction Enforcement from Carteret and Craven
 Community College and other private and public training
 conferences and seminars. The Affiant has conducted and
 assisted in numerous criminal and narcotic investigations
 leading to arrests and convictions in [ ] trafficking different
 types of illegal narcotics, as well as crimes against persons,
 property crimes, both felony and misdemeanor.

 -2-
 STATE V. BAILEY

 Opinion of the Court

 Detective Rose then provided a statement of facts establishing probable cause

as follows:1

 On 04/25/2017 at approximately 5:35 pm Detectives
 with the Carteret County Sheriff’s Office, Jones County
 Sheriff’s Office, and Havelock Police Department were
 conducting visual surveillance of a parking lot area located
 at 900 Old Fashioned Way in Newport, North Carolina.
 The name of the Apartment Complex is Compass Landing
 Apartments. During surveillance of the parking lot area
 Affiant of the Carteret County Sheriff’s Office observed a
 blue in color Jeep Compass bearing a North Carolina
 Registration of “BRITCP” arrive in the parking lot area and
 park.
 Affiant observed the occupants of the vehicle to be
 Brittany Elizabeth Tommasone as the driver and James
 Edward White Jr. as the front seat passenger of the vehicle.
 Affiant is familiar with Brittany Tommasone and James
 White Jr. from past dealings related to drug activity[,]
 including the sale of [i]llegal [n]arcotics. Affiant also had
 recent knowledge from 04/24/2017 that Britt[an]y
 Tommasone and James White Jr. were not residing at
 Compass Landing Apartments and have established a
 residence at 146. E. Chatham Street in Newport, North
 Carolina according to Brittany Tommaso[n]e and James
 White Jr.
 Once the vehicle parked, Affiant observed a white
 female exit the passenger seat of a white in color Mercury
 Milan bearing a North Carolina Registration of “DCP-
 1384.” Once the white female exited the vehicle the female
 walked and entered the blue in color Jeep. After
 approximately thirty seconds the same female that
 recently entered the blue in color [J]eep exited the blue in
 color [J]eep and walked back to the original vehicle the
 female subject exited from which was the white in color
 Mercury passenger vehicle. Once the female subject
 entered the white in color Mercury passenger vehicle the

 1 Text has been modified to include paragraph breaks for ease of reading.

 -3-
 STATE V. BAILEY

 Opinion of the Court

vehicle began exiting the parking lot area along with the
blue Jeep Compass that was occupied by Brittany
Tommasone and James White Jr. There were no other
occupants in the Jeep that were observed by Affiant. In
Affiant’s training and experience the actions observed by
the occupants of the two vehicles were consistent with that
of a [d]rug [d]eal.
 The facts that support the observation are the
secluded location where the subjects met, previous
knowledge of James White Jr. and Brittany Tommasone as
participants in the active selling of illegal [n]arcotics, drug
complaints the Carteret County Sheriff’s Office had
received about James White Jr. and Brittnay
Tommaso[n]e, and the duration of time spent inside of the
Jeep once the female subject entered the Jeep from the
time the female subject exited the Jeep. The two vehicles
were traveling at a high rate of speed as the two vehicles
were trailering one another out of the parking lot area.
 Once exiting the parking lot area both vehicles made
a left hand turn near the Dollar General and began
traveling towards US-70. Once approaching US-70 both
vehicles turned right onto US-70 and began traveling east
bound on US-70 still trailering one another. As both
vehicles approached the intersection of US-70 and 9 Foot
Road both vehicles merged into the left hand turning lane
which merges from US-70 to Howard Blvd. Once the
directional signal turned green the Jeep continued onto
Howard Blvd. as the white in color Mercury made a U-Turn
and began traveling west bound on US-70 towards
Havelock.
 Affiant followed the white in color Mercury car on
US-70 into Havelock where the vehicle made several lane
changes without giving a turn signal. Detective Corey
radioed to Affiant stating that the blue in color Jeep had
driven back to 146 E. Chatham Street [A]partment 1[,] and
that both occupants had exited the vehicle and entered the
residence.
 Detective Moots had caught up to Affiant by this
time and also observed several traffic violations made by
the white Mercury vehicle and activated his emergency

 -4-
 STATE V. BAILEY

 Opinion of the Court

 equipment on US-70 near McDonald’s pva. The Mercury
 put on brakes as Detective Moots had activated his
 emergency equipment and slowly began to stop but
 continued rolling forward. Once the vehicle came to a
 complete stop on Webb Blvd just west of McDonald[’]s
 Restaurant[,] Detective Moots, Henderson[,] and Affiant
 approached the vehicle and Affiant came into contact with
 the passenger later identified as Autumn Lynn Taylor as
 the front seat passenger and Allen Dellacava as the driver
 of the vehicle.
 Affiant requested Autumn Taylor to exit the vehicle
 in which she complied. Once Autumn Taylor exited the
 vehicle Affiant asked who she had just met with in which
 Autumn Taylor replied James White. Affiant then asked
 Autumn Taylor if she had just recently purchased Heroin
 from James White due to the recent observations observed
 in the Compass Landing parking lot area. Autumn Taylor
 responded that she purchased a twenty dollar bag of
 Heroin and snorted while traveling down the road and once
 finished she threw the Heroin baggie out the window.
 Detective Henderson was speaking with Dellacava during
 this time along with Detective Moots as Dellacava had
 already been requested to exit the vehicle and was
 explained the reasoning for the stop. Verbal consent was
 given by Dellacava to search Dellacava’s person and
 Dellacava’s vehicle in the presence of Detective Moots and
 Detective Henderson. During the duration of search of the
 vehicle[,] a Springfield XD 45 Caliber was located in the
 glove compartment area of the vehicle and was secured.
 After a short roadside inquiry[,] both occupants were
 released with strong reprimand and warning from
 Detective Henderson. Detective Henderson also informed
 Dellacava of the concealed weapon violation and the
 custody of the handgun was given back to Dellacava.

 The search warrant was issued, and the search was conducted that same night.

Tommasone, White, and Defendant were in the residence at that time. More than 41

 -5-
 STATE V. BAILEY

 Opinion of the Court

grams of cocaine were seized from Defendant, along with drug paraphernalia, and

approximately $900 in US Currency.

 Defendant was indicted on October 9, 2017 for trafficking in cocaine. On July

3, 2018, Defendant filed a motion to suppress in which he argued the facts alleged in

the affidavit were insufficient to support a finding of probable cause to obtain a search

warrant for the Chatham Street Apartment. The trial court denied Defendant’s

motion to suppress, concluding the facts alleged in the affidavit were sufficient to

support a finding of probable cause to issue a search warrant for the Chatham Street

residence.

 Defendant pleaded guilty to trafficking in cocaine while preserving his right to

appeal the trial court’s denial of his motion to suppress. The trial court sentenced

Defendant to 35 to 51 months in prison and ordered him to pay a $50,000.00 fine.

Defendant appeals, arguing that the trial court erred in denying his motion to

suppress. Specifically, Defendant contends that the sworn affidavit provided by

Detective Rose did not provide probable cause to issue the search warrant. We

disagree.

 Standard of Review

 A reviewing court is responsible for ensuring that
 the issuing magistrate had a substantial basis for
 concluding that probable cause existed. Our Supreme
 Court has stated, “the applicable test is whether, given all
 the circumstances set forth in the affidavit before the

 -6-
 STATE V. BAILEY

 Opinion of the Court

 magistrate, . . . there is a fair probability that
 contraband . . . will be found in a particular place.”

State v. Frederick, ___ N.C. App. ___, ___, 814 S.E.2d 855, 858 (purgandum), aff’d, ___

N.C. ___, 819 S.E.2d 346 (2018).

 Analysis

 The right of the people to be secure in their persons,
 houses, papers, and effects, against unreasonable searches
 and seizures, shall not be violated, and no Warrants shall
 issue but upon probable cause, supported by Oath or
 affirmation, and particularly describing the place to be
 searched, and the persons or things to be seized.

U.S. Const. amend. IV. Probable cause does not require absolute certainty. State v.

Campbell, 282 N.C. 125, 129, 191 S.E.2d 752, 755 (1972). Rather, “[p]robable

cause . . . means a reasonable ground to believe that the proposed search will reveal

the presence upon the premises to be searched of the objects sought and that those

objects will aid in the apprehension or conviction of the offender.” Id. at 128-29, 191

S.E.2d at 755 (citation omitted).

 However, the allegations made in an affidavit supporting issuance of a search

warrant requires only that the magistrate determine “there is a ‘fair probability’ that

contraband will be found in the place being searched.” State v. McKinney, 368 N.C.

161, 164, 775 S.E.2d 821, 824 (2015) (citations omitted). “The quantum of proof

required to establish probable cause is different than that required to establish guilt.”

Frederick, ___ N.C. App. at ___, 814 S.E.2d at 858 (citing Draper v. United States, 358

 -7-
 STATE V. BAILEY

 Opinion of the Court

U.S. 307, 311-12 (1959)). “Probable cause requires . . . only a probability or

substantial chance of criminal activity.” McKinney, 368 N.C. at 165, 775 S.E.2d at

825 (citation and quotation marks omitted). Probable cause is a flexible standard

that is based upon the totality of the circumstances. State v. Zuniga, 312 N.C. 251,

260-62, 322 S.E.2d 140, 146 (1984).

 Moreover, determination of probable cause permits a “magistrate to draw

‘reasonable inferences’ from the evidence . . . .” McKinney, 368 N.C. at 164, 775

S.E.2d at 824 (citation omitted). An inference of criminal activity is to be based upon

“the factual and practical considerations of everyday life on which reasonable and

prudent men, not legal technicians, act.” State v. Riggs, 328 N.C. 213, 219, 400 S.E.2d

429, 433 (1991) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). The facts alleged

in the affidavit need only “fit together well and yield a fair probability that a police

officer executing the warrant will find contraband or evidence of a crime at the place

to be searched . . . .” State v. Allman, 369 N.C. 292, 294, 794 S.E.2d 301, 303 (2016).

 When reviewing an affidavit for a search warrant, a reviewing court should

accord “great deference . . . [to] a magistrate’s determination of probable cause

and . . . after-the-fact scrutiny should not take the form of a de novo review.” State v.

Arrington, 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984) (citing Gates, 462 U.S. at

236). The role of this court “is simply to ensure that the magistrate had a ‘substantial

basis for ... conclud[ing]’ that probable cause existed.” Arrington, 311 N.C. at 638,

 -8-
 STATE V. BAILEY

 Opinion of the Court

319 S.E.2d at 258 (alteration in original) (quoting Gates, 462 U.S. at 238). Reviewing

“courts should not invalidate warrant[s] by interpreting affidavit[s] in a

hypertechnical, rather than a commonsense, manner.” Riggs, 328 N.C. at 222, 400

S.E.2d at 434-35 (alterations in original) (quoting Gates, 462 U.S. at 236). Moreover,

“[t]he resolution of doubtful or marginal cases in this area should be largely

determined by the preference to be accorded to warrants.” Id., 400 S.E.2d at 435

(emphasis added).

 Here, the statements alleged in the affidavit yield more than a fair probability

that officers executing a search warrant would find evidence of an illegal drug

transaction or illegal drug activity at the Chatham Street address. Detective Rose’s

affidavit stated that the officers observed the drug transaction in which Taylor

purchased heroin from White. Taylor was then stopped by Detective Rose shortly

after leaving the scene of the drug transaction. When asked, Taylor confirmed to

Detective Rose that she had purchased “a twenty dollar bag of heroin” from White.

At this point, officers had witnessed what they believed was a crime involving the

sale of illegal drugs, and confirmed that a sale of heroin had occurred through Taylor’s

statement.

 At the same time, Detective Corey followed the blue Jeep Compass to the

residence at 146 E. Chatham Street. Based on the chronology set forth in the

affidavit, before the traffic stop was initiated against Taylor, Detective Corey radioed

 -9-
 STATE V. BAILEY

 Opinion of the Court

Detective Rose and informed him that he observed Tommasone and White go into the

apartment at that address.

 From this information in the affidavit, the magistrate could reasonably infer

that Tommasone and White traveled directly from the scene of the drug transaction

to the Chatham Street residence.2 In addition, it is reasonable to infer that

Tommasone and White went to the residence with the twenty dollars Taylor admitted

she used to obtain the heroin. This money was evidence of the drug transaction, and

the magistrate could reasonably infer that this evidence would be present at the

Chatham Street address. Thus, contrary to our dissenting colleague’s assertion,

there was a direct connection between the crime observed and the location to be

searched.

 Even if we were to assume that money obtained from an illegal drug

transaction was not evidence of a crime, there still existed sufficient inferences to

establish a nexus. See Allman, 369 N.C. at 297, 794 S.E.2d at 305 (nexus may be

inferred to support a finding of probable cause even absent evidence “directly link[ing]

defendant’s home with evidence of drug dealing.”).

 Here, it would also be reasonable to infer that the two drug dealers whom

investigators had just observed sell heroin, and who were known by detectives to be

 2 The trial court found in its order denying the motion to suppress that Detective Corey
followed the blue Jeep Compass “directly to the residence at 146 E. Chatham Street, Newport.”

 - 10 -
 STATE V. BAILEY

 Opinion of the Court

involved in drug activity, would have other additional drugs or paraphernalia stored

in their residence or vehicle. The practical considerations involved in selling

quantities of heroin require that the product be cut, weighed, and packaged at some

location. Common sense suggests that the blue Jeep Compass is not the ideal location

for such activity, and that a residence is where this type of preparation would take

place. Moreover, it is highly unlikely that individuals who are involved in the sale of

illegal drugs would trust others in the business to hold their product. Even though

not stated in the affidavit, it is also common sense “that drug dealers typically keep

evidence of drug dealing at their homes.” Allman, 369 N.C. at 295-96, 794 S.E.2d at

304. The dissent’s assertion that there is no nexus here ignores the totality of the

evidence and the inferences which could be reasonably drawn from the facts set forth

in the affidavit.

 Thus, there was a fair probability that evidence of the illegal drug transaction

with Taylor, or other contraband, would be found at the Chatham Street address.

There is no question that the affidavit here could have been more specific and

provided more facts. But, the dissent would ignore the “great deference” that should

be afforded to the magistrate’s determination in favor of “after-the-fact scrutiny” in

the form of de novo review. This is not permitted. See Arrington, 311 N.C. at 638,

319 S.E.2d at 258 (citing Gates, 462 U.S. at 236).

 - 11 -
 STATE V. BAILEY

 Opinion of the Court

 Here, the facts alleged in Detective Rose’s affidavit, when taken together with

the reasonable inferences that could be drawn therefrom, yield a fair probability that

the officers would find contraband or evidence at the drug dealers’ residence.

Claiming there is no “link” between the drug deal and the Chatman Street Apartment

runs counter to a “ ‘practical, common-sense decision,’ based on the totality of

circumstances . . . .” McKinney, 268 N.C. at 164, 775 S.E.2d at 824 (quoting Gates,

462 U.S. at 238).

 The magistrate had a substantial basis for determining that probable cause

existed. The trial court’s order denying Defendant’s motion to suppress should be

affirmed.

 AFFIRMED.

 Judge DIETZ concurs.

 Judge ZACHARY dissents with separate opinion.

 - 12 -
 No. COA18-1187 – State v. Bailey

 ZACHARY, Judge, dissenting.

 In that the search warrant application in the instant case sought to search

Defendant’s home based solely upon an allegation that his two roommates had

recently sold narcotics from a different location, I agree with Defendant that this case

is indistinguishable from State v. Campbell, 282 N.C. 125, 191 S.E.2d 752 (1972).

Because that crime had been completed—and the evidence for its prosecution already

obtained—and because the search warrant application did not allege that narcotics

had otherwise been possessed or sold in or about the premises, I believe Campbell

compels this Court to hold that the magistrate did not have a substantial basis for

concluding that probable cause existed to search the home. Accordingly, I respectfully

dissent, and would reverse the trial court’s order denying Defendant’s motion to

suppress.

 On 25 April 2017, officers with the Carteret County Sheriff’s Office applied for

a warrant to search Defendant’s three-bedroom apartment located on E. Chatham

Street in Newport (“Defendant’s Apartment” or “the Chatham Street Apartment”).

Defendant was not named as the target of the search warrant application, although

he was the only individual listed on the lease for the Chatham Street Apartment. The

search warrant application instead sought to search the Chatham Street Apartment

for “violations of possession of illegal narcotics” by Brittany Tommasone and James

White, Defendant’s roommates at the time.
 STATE V. BAILEY

 ZACHARY, J., dissenting

 As the majority notes, the facts alleged in the search warrant application to

support a finding of probable cause to search the Chatham Street Apartment were

(1) that Defendant’s roommates were seen selling narcotics to an individual at a

different apartment complex, and (2) that they thereafter returned to the Chatham

Street Apartment.

 In his motion to suppress, Defendant argued that these allegations were

insufficient to support a finding of probable cause that evidence of narcotics would

also be found inside the Chatham Street Apartment. Specifically, Defendant noted

that the affidavit “included no information indicating that drugs had been possessed

in or sold from [the Chatham Street Apartment], and failed to establish a nexus

between his residence and the narcotics being sought.” I agree that these

circumstances warrant reversal of the trial court’s denial of Defendant’s motion to

suppress.

 “Probable cause to search exists where the known facts and circumstances are

sufficient to warrant a man of reasonable prudence in the belief that contraband or

evidence of a crime will be found in a particular place.” United States v. Doyle, 650

F.3d 460, 471 (4th Cir. 2011) (quotation marks omitted); accord State v. Allman, 369

N.C. 292, 294, 794 S.E.2d 301, 303 (2016). Thus, in seeking authorization to search a

particular location for contraband, the affidavit must include allegations of some facts

or circumstances establishing a nexus between the identified premises and the

 2
 STATE V. BAILEY

 ZACHARY, J., dissenting

presence of contraband; an affidavit that “implicates [the] premises solely as a

conclusion of the affiant” is insufficient. Campbell, 282 N.C. at 131, 191 S.E.2d at 757.

“The critical element in a reasonable search is not that the owner of the property is

suspected of crime but that there is reasonable cause to believe that the specific

‘things’ to be searched for and seized are located on the property to which entry is

sought.” Zurcher v. Stanford Daily, 436 U.S. 547, 556, 56 L. Ed. 2d 525, 535 (1978).

Neither our Supreme Court nor the United States Supreme Court has “approved an

affidavit for the issuance of a search warrant that failed to implicate the premises to

be searched.” Campbell, 282 N.C. at 131, 191 S.E.2d at 757.

 In State v. Campbell, officers applied for a warrant to search a home upon

obtaining arrest warrants for its residents after they had each sold narcotics to an

undercover officer. Id. at 130, 191 S.E.2d at 756. The affidavit, however, provided no

information from which it could be gleaned that those sales were, in fact, conducted

from within the home, nor did the affidavit otherwise indicate “that narcotic drugs

were ever possessed or sold in or about the dwelling.” Id. at 131, 191 S.E.2d at 757.

The affidavit therefore “implicate[d] those premises solely as a conclusion of the

affiant,” having “detail[ed] no underlying facts and circumstances from which the

issuing officer could find that probable cause existed to search the premises described.”

Id. Quite simply, an inference that narcotics would be found in the premises did “not

reasonably arise” from the mere fact that it was the known residence of narcotics

 3
 STATE V. BAILEY

 ZACHARY, J., dissenting

dealers. Id. Accordingly, our Supreme Court reversed the trial court’s denial of the

defendant’s motion to suppress, in that the search warrant application did not detail

“any underlying circumstances . . . from which the magistrate could reasonably

conclude that the proposed search would reveal the presence of illegal drugs in the

dwelling.” Id.

 I am unable to discern any factor which practically distinguishes the case at

bar from Campbell,3 which the majority altogether neglects to discuss.

 Just as in Campbell, the affidavit in the instant case “details no underlying

facts and circumstances from which the issuing officer could find that probable cause

existed to search the premises described.” Id. The affidavit here did not contain “any

statement that narcotic drugs were ever possessed or sold in or about” the residence.

Id. Moreover, it is important to note that the officers had already obtained the

evidence of the crime for which the search warrant was sought; no facts or

circumstances were alleged that suggested the presence of additional narcotics within

the Chatham Street Apartment, such as evidence that Defendant’s roommates were

observed carrying contraband or other related items from their vehicle into the

residence following their alleged street-sale. See id. at 132, 191 S.E.2d at 757 (“[T]he

United States Supreme Court [has] said that there must be ‘reasonable grounds at

 3 It is of no meaningful distinction that the suspects in Campbell were known to live in the
house identified in the search warrant application, whereas the detectives here observed the suspects
“go into the apartment at that address.” Majority at 10. (Emphasis added).

 4
 STATE V. BAILEY

 ZACHARY, J., dissenting

the time of issuance of the warrant for the belief that the law was being violated on

the premises to be searched.’ ” (alterations and citation omitted)). Also absent from

the affidavit was any insight from the affiant’s “training and experience” which might

have helped to link the single occurrence of a narcotics transaction with the presence

of additional narcotics inside the suspected dealer’s home, in light of other suspicious

factors. See Allman, 369 N.C. at 295-97, 794 S.E.2d at 304-05 (distinguishing the facts

from Campbell because the search warrant application in Allman included both

insight from the affiant’s training and experience “that drug dealers typically keep

evidence of drug dealing at their homes,” as well as the fact that the suspect had

initially “lied to [the officer] about his true address”).

 The affidavit instead purported to connect Defendant’s Apartment to suspected

criminal activity on the basis of Defendant’s roommates having returned there after

allegedly selling narcotics to an individual from their vehicle at a different apartment

complex. See Campbell, 282 N.C. at 132, 191 S.E.2d at 757 (explaining the “uniformly

held” understanding that observing an individual selling narcotics does “not in any

way link such activities to [his] apartment,” and is therefore insufficient “to establish

probable cause for a search of his apartment”). Having only identified Defendant’s

Apartment as the current residence of two suspected narcotics dealers, the affidavit

thus sought to implicate the residence in the harboring of narcotics “solely as a

 5
 STATE V. BAILEY

 ZACHARY, J., dissenting

conclusion of the affiant.” Id. at 131, 191 S.E.2d at 757. As our Supreme Court has

explained:

 Probable cause cannot be shown by affidavits which are
 purely conclusory, stating only the affiant’s or an
 informer’s belief that probable cause exists without
 detailing any of the underlying circumstances upon which
 that belief is based. Recital of some of the underlying
 circumstances in the affidavit is essential if the magistrate
 is to perform his detached function and not serve merely as
 a rubber stamp for the police. The issuing officer must
 judge for himself the persuasiveness of the facts relied on
 by a complaining officer to show probable cause. He should
 not accept without question the complainant’s mere
 conclusion.

Id. at 130-31, 191 S.E.2d at 756 (quotation marks and citations omitted).

 Accordingly, I would necessarily hold that the search warrant application in

the instant case failed to provide the issuing magistrate with a substantial basis from

which to conclude that the proposed search of Defendant’s Apartment would reveal

the presence of illegal narcotics. I would therefore reverse the trial court’s order

denying Defendant’s motion to suppress the evidence recovered from that search and

the judgment entered upon his guilty plea.4

 4 Defendant also notes that the written judgment entered in the instant case indicates that he
pleaded guilty to a Class F offense, whereas the transcript of plea and Defendant’s sentence reveal
that the trafficking in cocaine offense to which he pleaded guilty was, in fact, a Class G offense.
However, because I would reverse the judgment entered against Defendant upon reversing the order
denying his motion to suppress, I do not believe it necessary to further remand the case to the trial
court for correction of this clerical error.

 6