ZACHARY, Judge, dissenting.
 

 In that the search warrant application in the instant case sought to search Defendant's home based solely upon an allegation that his two roommates had recently sold narcotics from a different location, I agree with Defendant that this case is indistinguishable from
 
 State v. Campbell
 
 ,
 
 282 N.C. 125
 
 ,
 
 191 S.E.2d 752
 
 (1972). Because that crime had been completed-and the evidence for its prosecution already obtained-and because the search warrant application did not allege that narcotics had otherwise been possessed or sold in or about the premises, I believe
 
 Campbell
 
 compels this Court to hold that the magistrate did not have a substantial basis for concluding that probable cause existed to search the home. Accordingly, I respectfully dissent, and would reverse the trial court's order denying Defendant's motion to suppress.
 

 On 25 April 2017, officers with the Carteret County Sheriff's Office applied for a warrant to search Defendant's three-bedroom apartment located on E. Chatham Street in Newport ("Defendant's Apartment" or "the Chatham Street Apartment"). Defendant was not named as the target of the search warrant application, although he was the only individual listed on the lease for the Chatham Street Apartment. The
 search warrant application instead sought to search the Chatham Street Apartment for "violations of possession of illegal narcotics" by Brittany Tommasone and James White, Defendant's roommates at the time.
 

 As the majority notes, the facts alleged in the search warrant application to support a finding of probable cause to search the Chatham Street Apartment were (1) that Defendant's roommates were seen selling narcotics to an individual at a different apartment complex, and (2) that they thereafter returned to the Chatham Street Apartment.
 

 In his motion to suppress, Defendant argued that these allegations were insufficient to support a finding of probable cause that evidence of narcotics would also be found inside the
 
 Chatham Street Apartment
 
 . Specifically, Defendant noted that the affidavit "included no information indicating that drugs had been possessed in or sold from [the Chatham Street Apartment], and failed to establish a nexus between his residence and the narcotics being sought." I agree that these circumstances warrant reversal of the trial court's denial of Defendant's motion to suppress.
 

 "Probable cause to search exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place."
 
 United States v. Doyle
 
 ,
 
 650 F.3d 460
 
 , 471 (4th Cir. 2011) (quotation marks omitted);
 
 accord
 

 State v. Allman
 
 ,
 
 369 N.C. 292
 
 , 294,
 
 794 S.E.2d 301
 
 , 303 (2016). Thus, in seeking authorization to search a particular location for contraband, the affidavit must include allegations of some facts or circumstances establishing a nexus between the identified premises and the presence of contraband; an affidavit that "implicates [the] premises
 
 solely as a conclusion of the affiant
 
 " is insufficient.
 
 Campbell
 
 ,
 
 282 N.C. at 131
 
 ,
 
 191 S.E.2d at 757
 
 . "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."
 
 Zurcher v. Stanford Daily
 
 ,
 
 436 U.S. 547
 
 , 556,
 
 98 S.Ct. 1970
 
 , 1977,
 
 56 L.Ed.2d 525
 
 , 535 (1978). Neither our Supreme Court nor the United States Supreme Court has "approved an affidavit for the issuance of a search warrant that failed to implicate the premises to be searched."
 
 Campbell
 
 ,
 
 282 N.C. at 131
 
 ,
 
 191 S.E.2d at 757
 
 .
 

 In
 
 State v. Campbell
 
 , officers applied for a warrant to search a home upon obtaining arrest warrants for its residents after they had each sold narcotics to an undercover officer.
 
 Id
 
 . at 130,
 
 191 S.E.2d at 756
 
 . The affidavit, however, provided no information from which it could be gleaned that those sales were, in fact, conducted from within the home, nor did the affidavit otherwise indicate "that narcotic drugs were ever possessed
 or sold in or about the dwelling."
 
 Id
 
 . at 131,
 
 191 S.E.2d at 757
 
 . The affidavit therefore "implicate[d] those premises
 
 solely as a conclusion of the affiant
 
 ," having "detail[ed] no underlying facts and circumstances from which the
 issuing officer could find that probable cause existed
 
 to search the premises described
 
 ."
 

 Id.
 

 Quite simply, an inference that narcotics would be found in the premises did "not reasonably arise" from the mere fact that it was the known residence of narcotics dealers.
 
 Id
 
 . Accordingly, our Supreme Court reversed the trial court's denial of the defendant's motion to suppress, in that the search warrant application did not detail "any underlying circumstances ... from which the magistrate could reasonably conclude that the proposed search would reveal the presence of illegal drugs in the dwelling."
 

 Id.
 

 I am unable to discern any factor which practically distinguishes the case at bar from
 
 Campbell
 
 ,
 
 [3]
 
 which the majority altogether neglects to discuss.
 

 Just as in
 
 Campbell
 
 , the affidavit in the instant case "details no underlying facts and circumstances from which the issuing officer could find that probable cause existed
 
 to search the premises described
 
 ."
 

 Id.
 

 The affidavit here did not contain "any statement that narcotic drugs were ever possessed or sold in or about" the residence.
 

 Id.
 

 Moreover, it is important to note that the officers had already obtained the evidence of the crime for which the search warrant was sought; no facts or circumstances were alleged that suggested the presence of additional narcotics within the Chatham Street Apartment, such as evidence that Defendant's roommates were observed carrying contraband or other related items from their vehicle into the residence following their alleged street-sale.
 
 See
 

 id.
 
 at 132,
 
 191 S.E.2d at 757
 
 ("[T]he United States Supreme Court [has] said that there must be 'reasonable grounds at the time of issuance of the warrant for the belief that the law was being violated
 
 on the premises to be searched
 
 .' " (alterations and citation omitted)). Also absent from the affidavit was any insight from the affiant's "training and experience" which might have helped to link the single occurrence of a narcotics transaction with the presence of additional narcotics inside the suspected dealer's home, in light of other suspicious factors.
 
 See
 

 Allman
 
 ,
 
 369 N.C. at 295-97
 
 ,
 
 794 S.E.2d at 304-05
 
 (distinguishing the facts from
 
 Campbell
 
 because the search warrant application in
 
 Allman
 
 included both insight from the affiant's training and experience "that
 drug dealers typically keep evidence of drug dealing at their homes,"
 
 as well as the fact
 
 that the suspect had initially "lied to [the officer] about his true address").
 

 The affidavit instead purported to connect Defendant's Apartment to suspected criminal activity on the basis of Defendant's roommates having returned there after allegedly selling narcotics to an individual from their vehicle at a different apartment complex.
 
 See
 

 Campbell
 
 ,
 
 282 N.C. at 132
 
 ,
 
 191 S.E.2d at 757
 
 (explaining the "uniformly held" understanding that observing an individual selling narcotics does "not in any way link such activities to [his] apartment," and is therefore insufficient "to establish probable cause for a search of his apartment"). Having only identified Defendant's Apartment as the current residence of two suspected narcotics dealers, the affidavit thus sought to implicate the residence in the harboring of narcotics "
 
 solely as a conclusion of the affiant.
 
 "
 
 Id.
 
 at 131,
 
 191 S.E.2d at 757
 
 . As our Supreme Court has explained:
 

 Probable cause cannot be shown by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. The issuing officer must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion.
 

 Id.
 
 at 130-31,
 
 191 S.E.2d at 756
 
 (quotation marks and citations omitted).
 

 Accordingly, I would necessarily hold that the search warrant application in the instant
 case failed to provide the issuing magistrate with a substantial basis from which to conclude that the proposed search of Defendant's Apartment would reveal the presence of illegal narcotics. I would therefore reverse the trial court's order denying Defendant's motion to suppress the evidence recovered from that search and the judgment entered upon his guilty plea.
 
 [4]
 

 It is of no meaningful distinction that the suspects in
 
 Campbell
 
 were
 
 known
 
 to live in the house identified in the search warrant application, whereas the detectives here observed the suspects "
 
 go
 
 into the apartment at that address."
 
 Majority
 
 at 899. (Emphasis added).
 

 Defendant also notes that the written judgment entered in the instant case indicates that he pleaded guilty to a Class F offense, whereas the transcript of plea and Defendant's sentence reveal that the trafficking in cocaine offense to which he pleaded guilty was, in fact, a Class G offense. However, because I would reverse the judgment entered against Defendant upon reversing the order denying his motion to suppress, I do not believe it necessary to further remand the case to the trial court for correction of this clerical error.