BERGER, Judge.
 

 Nicholas Omar Bailey ("Defendant") appeals from a judgment entered upon his guilty plea to trafficking in cocaine, following the trial court's denial of his motion to suppress. Because the magistrate had a substantial basis to find probable cause, we affirm the trial court's order denying Defendant's motion to suppress.
 

 Factual and Procedural Background
 

 On April 25, 2017, Detective Dallas Rose ("Detective Rose") with the Carteret County Sheriff's Department applied to a magistrate for a warrant to search the residence belonging to Brittany Tommasone ("Tommasone") and James White ("White") located at 146 E. Chatham Street, Apartment #1, Newport, North Carolina; any individual located at that location during the execution of the search warrant; and any vehicle at that location, including a blue Jeep Compass. Detective Rose, after being duly sworn, stated in his application that there was probable cause to believe "[h]eroin, scales, paraphernalia, packaging equipment, videos, photos, ledgers and documents" related to illegal narcotics would be found at the named location.
 

 Detective Rose provided information concerning his training and experience as a law enforcement officer for twelve years. Specifically, Detective Rose swore that he
 

 has been a Deputy Sheriff for 9 years and has been a Police K-9 Handler for 6 years with the Carteret County Sheriff's Office. The affiant also was a Police Officer for the Morehead City Police Department for 3 years. The affiant is currently assigned as a Detective with the Carteret County Sheriff's Office Narcotics Unit. The Affiant has been employed with the Carteret
 County Sheriff's Office since January 2006. The Affiant has received training in the field of Narcotics Investigations and Criminal Interdiction Enforcement from Carteret and Craven Community College and other private and public training conferences and seminars. The Affiant has conducted and assisted in numerous criminal and narcotic investigations leading to arrests and convictions in [ ] trafficking different types of illegal narcotics, as well as crimes against persons, property crimes, both felony and misdemeanor.
 

 Detective Rose then provided a statement of facts establishing probable cause as follows:
 
 [1]
 

 On 04/25/2017 at approximately 5:35 pm Detectives with the Carteret County Sheriff's Office, Jones County Sheriff's Office, and Havelock Police Department were conducting visual surveillance of a parking lot area located at 900 Old Fashioned Way in Newport, North Carolina.
 

 The name of the Apartment Complex is Compass Landing Apartments. During surveillance of the parking lot area Affiant of the Carteret County Sheriff's Office observed a blue in color Jeep Compass bearing a North Carolina Registration of "BRITCP" arrive in the parking lot area and park.
 

 Affiant observed the occupants of the vehicle to be Brittany Elizabeth Tommasone as the driver and James Edward White Jr. as the front seat passenger of the vehicle. Affiant is familiar with Brittany Tommasone and James White Jr. from past dealings related to drug activity[,] including the sale of [i]llegal [n]arcotics. Affiant also had recent knowledge from 04/24/2017 that Britt[an]y Tommasone and James White Jr. were not residing at Compass Landing Apartments and have established a residence at 146. E. Chatham Street in Newport, North Carolina according to Brittany Tommaso[n]e and James White Jr.
 

 Once the vehicle parked, Affiant observed a white female exit the passenger seat of a white in color Mercury Milan bearing a North Carolina Registration of "DCP-1384." Once the white female exited the vehicle the female walked and entered the blue in color Jeep. After approximately thirty seconds the same female that recently entered the blue in color [J]eep exited the blue in color [J]eep and walked back to the original vehicle the female subject exited from which was the white in color Mercury passenger vehicle. Once the female subject entered the white in color Mercury passenger vehicle the vehicle began exiting the parking lot area along with the blue Jeep Compass that was occupied by Brittany Tommasone and James White Jr. There were no other occupants in the Jeep that were observed by Affiant. In Affiant's training and experience the actions observed by the occupants of the two vehicles were consistent with that of a [d]rug [d]eal.
 

 The facts that support the observation are the secluded location where the subjects met, previous knowledge of James White Jr. and Brittany Tommasone as participants in the active selling of illegal [n]arcotics, drug complaints the Carteret County Sheriff's Office had received about James White Jr. and Britt[an]y Tommaso[n]e, and the
 duration of time spent inside of the Jeep once the female subject entered the Jeep from the time the female subject exited the Jeep. The two vehicles were traveling at a high rate of speed as the two vehicles were trailering one another out of the parking lot area.
 

 Once exiting the parking lot area both vehicles made a left hand turn near the Dollar General and began traveling towards US-70. Once approaching US-70 both vehicles turned right onto US-70 and began traveling east bound on US-70 still trailering one another. As both vehicles approached the intersection of US-70 and 9 Foot Road both vehicles merged into the left hand turning lane which merges from US-70 to Howard Blvd. Once the directional signal turned green the Jeep continued onto Howard Blvd. as the white in color Mercury made a U-Turn and began traveling west bound on US-70 towards Havelock.
 

 Affiant followed the white in color Mercury car on US-70 into Havelock where the vehicle made several lane changes without giving a turn signal. Detective Corey radioed to Affiant stating that the blue in color Jeep had driven back to 146 E. Chatham Street [A]partment 1[,] and that both occupants had exited the vehicle and entered the residence.
 

 Detective Moots had caught up to Affiant by this time and also observed several traffic violations made by the white Mercury vehicle and activated his emergency equipment on US-70 near McDonald's pva. The Mercury put on brakes as Detective Moots had activated his emergency equipment and slowly began to stop but continued rolling forward. Once the vehicle came to a complete stop on Webb Blvd just west of McDonald[']s Restaurant[,] Detective Moots, Henderson[,] and Affiant approached the vehicle and Affiant came into contact with the passenger later identified as Autumn Lynn Taylor as the front seat passenger and Allen Dellacava as the driver of the vehicle.
 

 Affiant requested Autumn Taylor to exit the vehicle in which she complied. Once Autumn Taylor exited the vehicle Affiant asked who she had just met with in which Autumn Taylor replied James White. Affiant then asked Autumn Taylor if she had just recently purchased Heroin from James White due to the recent observations
 observed in the Compass Landing parking lot area. Autumn Taylor responded that she purchased a twenty dollar bag of Heroin and snorted while traveling down the road and once finished she threw the Heroin baggie out the window. Detective Henderson was speaking with Dellacava during this time along with Detective Moots as Dellacava had already been requested to exit the vehicle and was explained the reasoning for the stop. Verbal consent was given by Dellacava to search Dellacava's person and Dellacava's vehicle in the presence of Detective Moots and Detective Henderson. During the duration of search of the vehicle[,] a Springfield XD 45 Caliber was located in the glove compartment area of the vehicle and was secured. After a short roadside inquiry[,] both occupants were released with strong reprimand and warning from Detective Henderson. Detective Henderson also informed Dellacava of the concealed weapon violation and the custody of the handgun was given back to Dellacava.
 

 The search warrant was issued, and the search was conducted that same night. Tommasone, White, and Defendant were in the residence at that time. More than 41 grams of cocaine were seized from Defendant, along with drug paraphernalia, and approximately $900 in US Currency.
 

 Defendant was indicted on October 9, 2017 for trafficking in cocaine. On July 3, 2018, Defendant filed a motion to suppress in which he argued the facts alleged in the affidavit were insufficient to support a finding of probable cause to obtain a search warrant for the Chatham Street Apartment. The trial court denied Defendant's motion to suppress, concluding the facts alleged in the affidavit were sufficient to support a finding of probable cause to issue a search warrant for the Chatham Street residence.
 

 Defendant pleaded guilty to trafficking in cocaine while preserving his right to appeal the trial court's denial of his motion to suppress. The trial court sentenced Defendant to 35 to 51 months in prison and ordered him to pay a $50,000.00 fine. Defendant appeals, arguing that the trial court erred in denying his motion to suppress. Specifically, Defendant contends that the sworn affidavit provided by Detective Rose did not provide probable cause to issue the search warrant. We disagree.
 

 Standard of Review
 

 A reviewing court is responsible for ensuring that the issuing magistrate had a substantial basis for concluding
 that probable cause existed. Our Supreme Court has stated, "the applicable test is whether, given all the circumstances set forth in the affidavit before the magistrate, ... there is a fair probability that contraband ... will be found in a particular place."
 

 State v. Frederick,
 
 --- N.C. App. ----, ----,
 
 814 S.E.2d 855
 
 , 858 (
 
 purgandum
 
 ),
 
 aff'd
 
 , --- N.C. ----,
 
 819 S.E.2d 346
 
 (2018).
 

 Analysis
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 

 U.S. Const. amend. IV. Probable cause does not require absolute certainty.
 
 State v. Campbell
 
 ,
 
 282 N.C. 125
 
 , 129,
 
 191 S.E.2d 752
 
 , 755 (1972). Rather, "[p]robable cause ... means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender."
 
 Id
 
 . at 128-29,
 
 191 S.E.2d at 755
 
 (citation omitted).
 

 However, the allegations made in an affidavit supporting issuance of a search warrant requires only that the magistrate determine "there is a 'fair probability' that contraband will be found in the place being searched."
 
 State v. McKinney
 
 ,
 
 368 N.C. 161
 
 , 164,
 
 775 S.E.2d 821
 
 , 824 (2015) (citations omitted). "The quantum of proof required to establish probable cause is different than that required to establish guilt."
 
 Frederick
 
 , --- N.C. App. at ----,
 
 814 S.E.2d at
 
 858 (citing
 
 Draper v. United States
 
 ,
 
 358 U.S. 307
 
 , 311-12,
 
 79 S.Ct. 329
 
 ,
 
 3 L.Ed.2d 327
 
 (1959) ). "Probable cause requires ... only
 
 a probability or substantial chance
 
 of criminal activity."
 
 McKinney,
 

 368 N.C. at 165
 
 ,
 
 775 S.E.2d at 825
 
 (citation and quotation marks omitted). Probable cause is a flexible standard that is based upon the totality of the circumstances.
 
 State v. Zuniga
 
 ,
 
 312 N.C. 251
 
 , 260-62,
 
 322 S.E.2d 140
 
 , 146 (1984).
 

 Moreover, determination of probable cause permits a "magistrate to draw 'reasonable inferences' from the evidence ...."
 
 McKinney,
 

 368 N.C. at 164
 
 ,
 
 775 S.E.2d at 824
 
 (citation omitted). An inference of criminal activity is to be based upon "the factual and practical considerations of
 everyday life on which reasonable and prudent men, not legal technicians, act."
 
 State v. Riggs
 
 ,
 
 328 N.C. 213
 
 , 219,
 
 400 S.E.2d 429
 
 , 433 (1991) (quoting
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 231,
 
 103 S.Ct. 2317
 
 ,
 
 76 L.Ed.2d 527
 
 (1983) ). The facts alleged in the affidavit need only "fit together well and yield a fair probability that a police officer executing the warrant will find contraband or evidence of a crime at the place to be searched ...."
 
 State v. Allman
 
 ,
 
 369 N.C. 292
 
 , 294,
 
 794 S.E.2d 301
 
 , 303 (2016).
 

 When reviewing an affidavit for a search warrant, a reviewing court should accord "great deference ... [to] a magistrate's determination of probable cause and ... after-the-fact scrutiny should not take the form of a
 
 de novo
 
 review."
 
 State v. Arrington
 
 ,
 
 311 N.C. 633
 
 , 638,
 
 319 S.E.2d 254
 
 , 258 (1984) (citing
 
 Gates
 
 ,
 
 462 U.S. at 236
 
 ,
 
 103 S.Ct. 2317
 
 ). The role of this court "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."
 
 Arrington
 
 ,
 
 311 N.C. at 638
 
 ,
 
 319 S.E.2d at 258
 
 (alteration in original) (quoting
 
 Gates
 
 ,
 
 462 U.S. at 238
 
 ,
 
 103 S.Ct. 2317
 
 ). Reviewing "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."
 
 Riggs
 
 ,
 
 328 N.C. at 222
 
 ,
 
 400 S.E.2d at 434-35
 
 (alterations in original) (quoting
 
 Gates
 
 ,
 
 462 U.S. at 236
 
 ,
 
 103 S.Ct. 2317
 
 ). Moreover, "[t]he resolution of
 
 doubtful or marginal cases
 
 in this area should be largely determined by the preference to be accorded to warrants."
 
 Id
 
 .,
 
 400 S.E.2d at 435
 
 (emphasis added).
 

 Here, the statements alleged in the affidavit yield more than a fair probability that officers executing a search warrant would find evidence of an illegal drug transaction or illegal drug activity at the Chatham Street address. Detective Rose's affidavit stated that the officers observed the drug transaction in which Taylor purchased heroin from White. Taylor was then stopped by Detective Rose shortly after leaving the scene of the drug transaction. When asked, Taylor confirmed to Detective Rose that she had purchased "a twenty dollar bag of heroin" from White. At this point, officers had witnessed what they believed was a crime involving the sale of illegal drugs, and confirmed that a sale of heroin had occurred through Taylor's statement.
 

 At the same time, Detective Corey followed the blue Jeep Compass to the residence at 146 E. Chatham Street. Based on the chronology set forth in the affidavit, before the traffic stop was initiated against Taylor, Detective Corey radioed Detective Rose and informed him that he observed Tommasone and White go into the apartment at that address.
 

 From this information in the affidavit, the magistrate could reasonably infer that Tommasone and White traveled directly from the scene
 of the drug transaction to the Chatham Street residence.
 
 [2]
 
 In addition, it is reasonable to infer that Tommasone and White went to the residence with the twenty dollars Taylor admitted she used to obtain the heroin. This money was evidence of the drug transaction, and the magistrate could reasonably infer that this evidence would be present at the Chatham Street address. Thus, contrary to our dissenting colleague's assertion, there was a direct connection between the crime observed and the location to be searched.
 

 Even if we were to assume that money obtained from an illegal drug transaction was not evidence of a crime, there still existed sufficient inferences to establish a nexus.
 
 See
 

 Allman
 
 ,
 
 369 N.C. at 297
 
 ,
 
 794 S.E.2d at 305
 
 (nexus may be inferred to support a finding of probable cause even absent evidence "directly link[ing] defendant's home with evidence of drug dealing.").
 

 Here, it would also be reasonable to infer that the two drug dealers whom investigators had just observed sell heroin, and who were known by detectives to be involved in drug activity, would have other additional drugs or paraphernalia stored in their residence or vehicle. The practical considerations involved in selling quantities of heroin require that the product be cut, weighed, and packaged at some location. Common sense suggests that the blue Jeep Compass is not the ideal location for such activity, and that a residence is where this type of preparation would take place. Moreover, it is highly unlikely that individuals who are involved in the sale of illegal drugs would trust others in the business to hold their product. Even though not stated in the affidavit, it is also common sense "that drug dealers typically keep evidence of drug dealing at their homes."
 
 Allman
 
 ,
 
 369 N.C. at 295-96
 
 ,
 
 794 S.E.2d at 304
 
 . The dissent's assertion that there is no nexus here ignores the totality of the evidence and the inferences which could be reasonably drawn from the facts set forth in the affidavit.
 

 Thus, there was a fair probability that evidence of the illegal drug transaction with Taylor, or other contraband, would be found at the Chatham Street address. There is no question that the affidavit here could have been more specific and provided more facts. But, the dissent would ignore the "great deference" that should be afforded to the magistrate's determination in favor of "after-the-fact scrutiny" in the form of
 
 de novo
 
 review. This is not permitted.
 
 See
 

 Arrington
 
 ,
 
 311 N.C. at 638
 
 ,
 
 319 S.E.2d at
 
 258 (citing
 
 Gates
 
 ,
 
 462 U.S. at 236
 
 ,
 
 103 S.Ct. 2317
 
 ).
 

 Here, the facts alleged in Detective Rose's affidavit, when taken together with the reasonable inferences that could be drawn therefrom, yield a fair probability that the officers would find contraband or evidence at the drug dealers' residence. Claiming there is no "link" between the drug deal and the Chatham Street Apartment runs counter to a " 'practical, common-sense decision,' based on the totality of circumstances ...."
 
 McKinney
 
 ,
 
 368 N.C. at 164
 
 ,
 
 775 S.E.2d at 824
 
 (quoting
 
 Gates
 
 ,
 
 462 U.S. at 238
 
 ,
 
 103 S.Ct. 2317
 
 ).
 

 The magistrate had a substantial basis for determining that probable cause existed. The trial court's order denying Defendant's motion to suppress should be affirmed.
 

 AFFIRMED.
 

 Judge DIETZ concurs.
 

 Judge ZACHARY dissents with separate opinion.
 

 Text has been modified to include paragraph breaks for ease of reading.
 

 The trial court found in its order denying the motion to suppress that Detective Corey followed the blue Jeep Compass "directly to the residence at 146 E. Chatham Street, Newport."