IN THE SUPREME COURT OF NORTH CAROLINA

No. 360A19

Filed 1 May 2020

STATE OF NORTH CAROLINA

v.

NICHOLAS OMAR BAILEY

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 831 S.E.2d 894 (N.C. Ct. App. 2019), affirming a judgment entered on 10 July 2018 by Judge Charles H. Henry in Superior Court, Carteret County. Heard in the Supreme Court on 9 March 2020.

*Joshua H. Stein, Attorney General, by Jessica Macari, Assistant Attorney General, for the State-appellee.*

*Richard Croutharmel for defendant-appellant.*

DAVIS, Justice.

The issue in this case is whether probable cause existed to support the issuance of a search warrant for defendant's residence. The warrant was issued based on information contained in a law enforcement officer's affidavit relating to the sale of illegal drugs earlier that day by other residents of the home. Because we are satisfied that the affidavit contained facts that were sufficient to provide a nexus between the residence and suspected criminal activity, we conclude that the warrant was supported by probable cause and affirm the decision of the Court of Appeals.

**Factual and Procedural Background**

On 25 April 2017, Detective Dallas Rose of the Carteret County Sheriff's Office applied for a warrant to search a residence located at 146 East Chatham Street in Newport, North Carolina, based on events that had occurred earlier that day. In his affidavit, Detective Rose set out the following information: At approximately 5:35 p.m. on that date, Detective Rose was conducting visual surveillance of a secluded parking lot outside of an apartment complex in Newport, along with three other law enforcement officers. Detective Rose observed a blue Jeep Compass pull into the parking lot. He was familiar with the occupants of the Jeep, James White and Brittany Tommasone, based on their previous drug-related activities, which included the sale of illegal narcotics. He also knew that White and Tommasone did not live at the apartment complex and instead lived across town at a residence located at 146 East Chatham Street.

Detective Rose then observed a female passenger get out of a nearby white Mercury Milan and walk over to the blue Jeep. After entering the Jeep and spending approximately 30 seconds inside the vehicle, the woman exited the Jeep and returned to the white Mercury. Both vehicles then exited the parking lot at a high rate of speed and drove away.

Based on his training and experience, Detective Rose believed that he had just witnessed a transaction involving the sale of drugs. Along with two of the other officers, he proceeded to follow the white Mercury and shortly thereafter pulled over

the vehicle upon witnessing its driver commit several traffic offenses. The female passenger in the white Mercury, Autumn Taylor, admitted to Detective Rose that she had just purchased a twenty-dollar bag of heroin from White, consumed it in the car, and then thrown the bag out of the car window.

Meanwhile, Detective Tim Corey followed the blue Jeep as it left the parking lot and proceeded to 146 East Chatham Street. Detective Corey observed the two occupants of the Jeep, White and Tommasone, exit the vehicle and go into Apartment 1. Detective Rose was aware that White and Tommasone lived at this address.

The search warrant application submitted by Detective Rose described the residence at 146 East Chatham Street as a "multi family wooden dwelling" divided into "3 separate known living quarters." The application contained a list of the items to be seized from the residence, which included controlled substances, drug paraphernalia, weapons, cell phones, computers, and "[a]ny United States Currency."

After reviewing the search warrant application and supporting affidavit, Carteret County Magistrate Erica Hughes issued a warrant authorizing a search of the residence located at 146 East Chatham Street as well as of any persons present at the time the warrant was executed and of any vehicles located on the premises. Unbeknownst to the officers at the time the warrant was issued, defendant also lived at the apartment on 146 East Chatham Street along with White and Tommasone.

Officers executed the search warrant at approximately midnight and found White and Tommasone, along with defendant and his girlfriend, present at the

residence. Defendant was in a bedroom of the apartment in which approximately 41 grams of cocaine, drug paraphernalia, and $924 in cash were also discovered.

Defendant was indicted by a grand jury on 9 October 2017 on a charge of trafficking in cocaine. On 3 July 2018, defendant filed a motion in Superior Court, Carteret County, to suppress evidence seized during the execution of the search warrant based on his contention that the facts contained in the affidavit were insufficient to establish probable cause to search his residence. After conducting a hearing on the motion to suppress, the trial court orally denied defendant's motion on 9 July 2018. Defendant subsequently entered into a plea agreement in which he pled guilty to the offense of trafficking in cocaine, while preserving his right to appeal the denial of his motion to suppress. Defendant was sentenced to 35–51 months imprisonment and ordered to pay a $50,000 fine. On 12 July 2018, the trial court entered a written order memorializing its prior ruling denying defendant's motion to suppress.

Defendant appealed to the Court of Appeals, arguing that the trial court had erred in denying his motion to suppress. The Court of Appeals majority affirmed the trial court's order, holding that the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *State v. Bailey*, 831 S.E.2d 894, 895 (N.C. Ct. App. 2019). In a dissenting opinion, Judge Zachary stated her belief that the warrant was not supported by probable cause due to the absence of any information in the affidavit specifically linking the residence to the sale or possession

of drugs. *Id.* at 900. Based on the dissent, defendant appealed as of right to this Court on 10 September 2019.

## Analysis

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue but upon probable cause." U.S. Const. amend. IV. Our state constitution "likewise prohibits unreasonable searches and seizures and requires that warrants be issued only on probable cause." *State v. Allman*, 369 N.C. 292, 293, 794 S.E.2d 301, 302–03 (2016) (citing N.C. Const. art. I, § 20). Pursuant to these constitutional directives, our General Statutes provide that a search warrant "must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched." N.C.G.S. § 15A-244(3) (2019). With regard to a search warrant directed at a residence, probable cause "means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender." *State v. Campbell*, 282 N.C. 125, 128–29, 191 S.E.2d 752, 755 (1972).

Our prior decisions provide a well-established framework for reviewing determinations of probable cause.

> This standard for determining probable cause is flexible, permitting the magistrate to draw "reasonable inferences" from the evidence in the affidavit supporting the application for the warrant . . . . That evidence

is viewed from the perspective of a police officer with the affiant's training and experience, and the commonsense judgments reached by officers in light of that training and specialized experience. Probable cause requires not certainty, but only "*a probability or substantial chance* of criminal activity." The magistrate's determination of probable cause is given "great deference" and "after-the-fact scrutiny should not take the form of a *de novo* review."

*State v. McKinney*, 368 N.C. 161, 164–65, 775 S.E.2d 821, 824–25 (2015) (citations omitted).

Our case law makes clear that when an officer seeks a warrant to search a residence, the facts set out in the supporting affidavit must show some connection or nexus linking the residence to illegal activity. Such a connection need not be direct, but it cannot be purely conclusory.

For example, in *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984), officers obtained a warrant to search a mobile home for evidence of drug dealing based on the following facts: (1) a confidential informant stated that he had previously purchased marijuana from the defendant and that the defendant was growing marijuana at his mobile home; and (2) a second confidential source stated that he had observed "a steady flow of traffic" in and out of the mobile home within the past month, consisting of many known drug users. *Id.* at 634, 319 S.E.2d at 255. Upon executing the warrant, officers found large amounts of marijuana on the premises. *Id.* at 635, 319 S.E.2d at 256.

We held that the warrant was supported by probable cause because the two tips provided a "strong inference" that the defendant was growing and selling

marijuana inside the mobile home. *Id.* at 641–42, 319 S.E.2d at 259–60. We stated that "[a] common sense reading of the information supplied by both informants provides a substantial basis for the *probability* that the defendant had sold marijuana [in the residence] . . . . No more is required under the Fourth Amendment." *Id.* at 642, 319 S.E.2d at 260.

Our decision in *Allman* provides another pertinent illustration. In that case, three roommates were pulled over while riding in a car together, and a search of their vehicle revealed the presence of a large quantity of marijuana and over $1,600 in cash. *Allman*, 369 N.C. at 292–93, 794 S.E.2d at 302. An officer applied for a warrant to search their home for evidence of drug dealing and asserted in his affidavit that: (1) large quantities of drugs and cash were found in their car; (2) two of the occupants of the car had a criminal history of drug offenses; and (3) the occupants had lied to officers about where they lived. *Id.* at 295–96, 794 S.E.2d at 304–05. The affidavit also stated, "based on [the officer's] training and experience, that drug dealers typically keep evidence of drug dealing at their homes." *Id.* A warrant was issued, and a search of the residence revealed the presence of illegal narcotics and drug paraphernalia. *Id.* at 296, 794 S.E.2d at 304.

Based on the facts contained in the affidavit, when viewed in light of the officer's training and experience, we determined that "it was reasonable for the magistrate to infer that there would be evidence of drug dealing" found at the residence. *Id.* at 296–97, 794 S.E.2d at 305. We acknowledged that "nothing in [the

officer's] affidavit directly linked defendant's home with evidence of drug dealing" but stated that such direct evidence is not always necessary to establish probable cause. *Id*. at 297, 794 S.E.2d at 305.

In *Campbell*, conversely, this Court determined that probable cause to search a residence was lacking when the facts set out in the officer's affidavit failed to establish any meaningful connection whatsoever between the illegal activity and the residence. *Campbell*, 282 N.C. at 128–32, 191 S.E.2d at 755–57. In that case, an officer sought a warrant to search the residence of three suspected drug dealers for evidence of illegal drugs. *Id*. at 130, 191 S.E.2d at 756. The warrant stated, in part, as follows:

> All of the . . . subjects live in the house across from Ma's Drive-in on Hwy. 55. They all have sold narcotics to Special Agent J. M. Burns of the SBI and are all actively involved in drug sales to Campbell College students; this is known from personal knowledge of affiant, interviews with reliable confidential informants and local police officers.

*Id*.

A warrant was issued, and a search of the residence revealed 289 LSD tablets on the premises. *Id*. at 126–27, 191 S.E.2d at 754. The defendant argued on appeal that no probable cause had existed to support the issuance of the search warrant. *Id*. at 127, 191 S.E.2d at 754. We agreed that the affidavit supporting the warrant was "fatally defective" because it "failed to implicate the premises to be searched." *Id*. at 131, 191 S.E.2d at 757. We explained that "[p]robable cause cannot be shown 'by affidavits which are purely conclusory, stating only the affiant's or an informer's

belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based.' " *Id*. at 130–31, 191 S.E.2d at 756 (quoting *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965)).

> [The affidavit] details no underlying facts and circumstances from which the issuing officer could find that probable cause existed *to search the premises described*. The affidavit implicates those premises *solely as a conclusion of the affiant*. Nowhere in the affidavit is there any statement that narcotic drugs were ever possessed or sold in or about the dwelling to be searched. Nowhere in the affidavit are any underlying circumstances detailed from which the magistrate could reasonably conclude that the proposed search would reveal the presence of illegal drugs in the dwelling. The inference the State seeks to draw from the contents of this affidavit—that narcotic drugs are illegally possessed on the described premises—does not reasonably arise from the facts alleged.

*Id*. at 131, 191 S.E.2d at 757. Accordingly, we concluded that the warrant was not supported by probable cause and that the evidence gathered as a result of the search was inadmissible. *Id*. at 132, 191 S.E.2d at 757.

Applying these principles to the present case, we are satisfied that the magistrate had a sufficient basis to conclude that probable cause existed to search the residence on East Chatham Street based on the facts contained in Detective Rose's affidavit. His affidavit included the following key information: (1) Detective Rose personally observed an encounter between Taylor, White, and Tommasone in a secluded parking lot that he believed—based on his training and experience—likely involved the sale of drugs; (2) Detective Rose knew White and Tommasone had a history of dealing drugs; (3) when Taylor was pulled over shortly after leaving the

parking lot, she confirmed that she had just purchased heroin from White; (4) an officer observed White and Tommasone travel from the scene of the drug deal to the residence on East Chatham Street, exit the vehicle, and go inside the apartment; and (5) Detective Rose knew that this address was, in fact, where White and Tommasone lived.

As in *Allman* and *Arrington,* these facts supported a reasonable inference that a link existed between the apartment on East Chatham Street and the sale of drugs by White and Tommasone. The information set out in Detective Rose's affidavit allowed the magistrate to infer that evidence related to this criminal activity—such as drugs, drug paraphernalia, proceeds from drug sales, or associated items—would likely be found at the residence.[1]

It is true that Detective Rose's affidavit did not contain any evidence that drugs were actually being sold at the apartment. But our case law makes clear that such evidence was not necessary in order for probable cause to exist. Rather, the affiant was simply required to demonstrate *some* nexus between the apartment on East Chatham Street and criminal activity. Because Detective Rose's affidavit set out information that established such a nexus, we are unable to conclude that the magistrate lacked a sufficient basis for determining that probable cause existed to search the apartment.

---

[1] Indeed, at a bare minimum, the affidavit clearly permitted an inference that the proceeds from the sale of the heroin to Taylor several hours earlier would be located at the apartment.

While defendant relies heavily on our decision in *Campbell* in arguing for a different result, we believe that the present case is readily distinguishable from *Campbell*. In that case, there was no information contained in the officer's affidavit to support a reasonable inference that the residence at issue was in any way connected to the suspects' alleged drug dealing. Rather, the affidavit merely relied on the bare fact that the suspects lived there. Here, conversely, Detective Rose's affidavit provided a link between the apartment and criminal activity.

To be sure, Detective Rose could have included greater detail in his affidavit as to why—based on his training and experience—he believed that evidence of criminal activity was likely to be present in the residence. Nevertheless, viewing the affidavit in its totality and remaining mindful of the deference that we accord to a magistrate's determination of probable cause, we conclude that the trial court did not err in denying defendant's motion to suppress. In so holding, we break no new legal ground and instead simply apply well-settled principles of law to the facts presented in this case.

## Conclusion

For the reasons stated above, we affirm the decision of the Court of Appeals.

AFFIRMED.